**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melanie Elaine Beauchamp,<br><br>            Plaintiff,<br><br>v.<br><br>Maria Cristina Muise and Jason Muise,<br><br>            Defendants. | No. CV-24-00861-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendants Maria Cristina Muise and Jason Muise's Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 5). For the following reasons, the Motion is granted with leave to amend.

## BACKGROUND

Plaintiff Melanie Elaine Beauchamp sells cosmetic products and resides in Arizona.[1] (Doc. 1-2 at 1). Defendants Maria Christina and Jason Muise are married.[2] (*Id.*). Beauchamp alleges that the Muises, through their statements on social media, committed the torts of false light, defamation, business disparagement, and intentional and negligent infliction of emotional distress. (*Id.* at 2-4).

In September 2023, Christina Muise reached out to Beauchamp to inquire about receiving free cosmetic products in exchange for promoting those products on social media.

---

[1] According to Plaintiff's Response to Defendant's Motion to Dismiss, Beauchamp owns and operates Cheveaux LLC, a compounding pharmacy in Arizona that specializes in skincare and hair regrowth products. (Doc. 9 at 3).
[2] According to Defendant's Motion to Dismiss, the Muises reside in New Hampshire. (Doc. 5 at 1).

(*Id.* at 1). Beauchamp and Christina Muise eventually agreed that Beauchamp would send products to Christina Muise as payment for creating social media content about those products. (*Id.* at 2). Beauchamp began to send products from her business in Arizona to the Muises in New Hampshire, and the Muises promoted those products on their social media platforms to over 340,000 followers. (*Id.*).

On February 6, 2023, Christina Muise allegedly criticized Beauchamp and her products on a TikTok livestream. (*Id.*). The Muises then allegedly opened fake accounts on TikTok to disparage the products and, on multiple occasions, made false statements about Beauchamp and her products on social media livestreams. (*Id.*). Christina Muise allegedly encouraged her followers on social media to stop using Beauchamp's products. (*Id.*). On March 16, 2024, Christina Muise allegedly urged her followers to "go after [Beauchamp's] board certifications," accusing Beauchamp of "unethical conduct or breach of professional duties" and "illegal" activity. (Doc. 1-2 at 3). The Muises also allegedly posted public records about Beauchamp on social media. (*Id.*).

## DISCUSSION

### I.     Legal Standard

In a motion to dismiss for lack of jurisdiction, the "party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Because the Court is resolving this Motion without holding an evidentiary hearing, Beauchamp "need make only a prima facie showing of jurisdictional facts to withstand this motion." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995); *see also Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir.1989). That is, Beauchamp "need only demonstrate facts that, if true, would support jurisdiction over the defendant." *Ballard*, 65 F.3d at 1498.

To establish the prima facie case for personal jurisdiction, the plaintiff has the burden of showing that: (1) the forum state's long-arm statute confers jurisdiction over the nonresident defendant; and (2) the exercise of jurisdiction comports with principles of due process. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995).

Arizona's long-arm statute confers jurisdiction to the maximum extent allowed by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Due process requires a nonresident defendant to have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation omitted). There are two types of personal jurisdiction, general and specific. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.5 (1985). General jurisdiction allows a court to entertain all actions against defendants because they have significant, continuous contacts with a forum state, while specific jurisdiction allows only actions against defendants that relate directly to their contacts with the forum state because those contacts are minimal. *See id.* In her Response to the Muises' Motion, Beauchamp makes no argument that this Court may exercise general jurisdiction over the Muises. Rather, Beauchamp asserts that specific jurisdiction exists.

**A. Specific Jurisdiction**

"Defendants' contacts with the forum state are sufficient to subject them to the state's specific jurisdiction if (1) they purposefully directed tortious activities at the forum or a resident thereof or performed some act by which they purposefully availed themselves of the privileges of conducting activities in the forum, (2) the claims arise out of or result from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Tanga.com LLC v. Gordon*, No. CV-14-01871, 2015 WL 533264, at *2 (D. Ariz. Feb. 9, 2015) (citing *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).

The Ninth Circuit has held that the specific jurisdiction test "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006). Under either the purposeful availment or purposeful direction analysis, plaintiffs must also show

that their suit arises out of the defendant's contacts in the forum state. *See Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995*)*; *Bancroft & Masters*, 223 F.3d at 1088. This "arising out of" requirement is met if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Omeluk*, 52 F.3d at 271.

The Court's decision whether to apply the purposeful availment or purposeful direction prong of the specific jurisdiction test turns on the nature of the underlying claims. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (citing *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017)). "When the underlying claims sound in contract," the Court employs the purposeful availment analysis. *Id.* "When [the underlying claims] arise from alleged tortious conduct committed outside the forum," the Court employs purposeful direction analysis. *Id.*; *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802-03 (9th Cir. 2004) (applying purposeful direction test where "[d]efendant's actions outside the forum state . . . are directed at the forum, such as the distribution in the forum state of goods originating elsewhere").

Since the underlying claims in this case—false light, defamation, business disparagement, and intentional and negligent infliction of emotional distress—sound in tort, the purposeful direction analysis for specific jurisdiction applies. *See Cummings v. Western Trial Lawyers Ass'n*, 133 F.Supp.2d 1144, 1153 (D. Ariz. 2001) (applying the purposeful direction analysis to cases involving defamation, intentional interference with business relationship, intentional infliction of emotional distress, and false light); *see also Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 n.1 (9th Cir. 1995) (applying the purposeful direction analysis to a case involving defamation, intentional interference with business relations, and intentional infliction of emotional distress).

### 1. Purposeful Direction

Courts evaluate purposeful direction using the *Calder* "effects test." *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). Under the "effects test," the defendant must allegedly have: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to

be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). All three elements of the test must be satisfied. *Schwarzenegger*, 374 F.3d at 805. The Ninth Circuit has cautioned that "a foreign act with foreseeable effects in the forum state [does not always give] rise to specific jurisdiction." *Dole*, 303 F.3d at 1112 (quoting *Bancroft*, 223 F.3d at 1087). Rather, "something more is needed in addition to a mere foreseeable effect." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). The Ninth Circuit has held that the requisite "something more" for purposeful direction involves "express aiming at the forum state," or in other words, "targeting" the forum state. *See Pebble Beach Co.*, 453 F.3d at 1156-57 (finding no specific personal jurisdiction where defendant's actions lack "individualized targeting" at the forum state).

The Muises' committed intentional acts for the purposes of the effects test. *See Bancroft*, 223 F.3d at 1088 (finding that the sending of a letter constituted an intentional act); *see also Cummings*, 133 F. Supp. at 1157-59 (finding that the creation of an agreement and actions related to the agreement constituted intentional acts); *see also Schwarzenegger*, 374 F.3d at 806 (holding that posting in a newspaper constituted an intentional act). The Muises' alleged acts cannot occur spontaneously or because of reflex, so the Court finds the Muises must have intended to perform them. *Marlyn Nutraceuticals*, 663 F.Supp at 850 (D. Ariz. 2009) (finding that Defendant's "phone calls, emails, and mailings" constituted intentional acts because the alleged acts "cannot occur spontaneously or because of reflex").

The next question is whether the Muises' intentional acts targeted Arizona. This inquiry is "fact-specific, but the Court is guided by the principle that it 'must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum.'" *Gonzalez v. U.S. Human Rights Network*, 512 F. Supp. 3d 944, 958 (D. Ariz. 2021) (citing *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015)). "The plaintiff cannot be the only link between the defendant and the forum," *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)), because "a tort must involve the forum state itself, and not just have some effect on a party who resides there." *Morrill*, 873 F.3d at 1145.

To begin, the Muises' remote communications with Beauchamp were not expressly aimed at Arizona. A defendant's remote communications with a plaintiff residing in the forum state do not constitute "express aiming," particularly where the defendant "never visited the forum state" or "performed any relevant duties in the forum state." *Gonzalez*, 512 F. Supp. at 958-59. Throughout the remote communications, the Muises remained in New Hampshire. Any connection to Arizona through these communications existed only because Beauchamp lived in Arizona, which is insufficient for purposeful direction. *See Morrill*, 873 F.3d at 1144 (finding no purposeful direction because "[a]ny links to Arizona, which included [d]efendants' communications with [p]laintiffs by telephone and email . . . occurred only because it happened to be where [p]laintiffs resided"). Even accepting Beauchamp's assertion that the Muises initiated contact with Beauchamp, a defendant's initiation of a conversation with a plaintiff who resides in the forum state does not necessarily yield a finding of personal jurisdiction over the defendant. *See Gray & Co. v. Firstenberg Machinery Co.*, Inc., 913 F.2d 758, 760-61 (9th Cir. 1990) (finding no personal jurisdiction despite defendant initiating the first conversation with plaintiff who resided in forum state).

Additionally, to the extent there may have been an agreement between Christina Muise and Beauchamp to receive free products in exchange for social media promotion, the fact that the parties entered into an agreement itself does not establish personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Further, the agreement lacks any written contract, as well as evidence of alleged negotiations in Arizona, meetings in Arizona, or a long-term relationship. *See LLC Wholesale Supply, LLC v. Allion HealthCare, Inc.*, No. 2:12-cv-01174, 2013 WL 12284460, at *4 (D. Ariz. Mar. 22, 2013) (finding no personal jurisdiction given absence of a written contract, negotiations, meetings in the forum state, and long-term relationship). The only connection to Arizona in this agreement, as alleged by Beauchamp, involves the

Muises' awareness that Beauchamp resided in Arizona and shipped the products from Arizona. (Doc. 9 at 4). But "mere knowledge of the [plaintiff's] residence is not sufficient to create personal jurisdiction." *Xcentric Ventures v. Bird*, 683 F.Supp.2d 1068, 1073 (D. Ariz. 2010). Beauchamp, therefore, does not allege the requisite "express aiming" or "targeting" of Arizona. *See Pebble Beach Co.*, 453 F.3d at 1156-57. Beauchamp provides no reason to believe, for example, that the Muise's comments were expressly or especially made to Arizona customers. Rather, this agreement appears to target an audience beyond Arizona, aiming to promote Beauchamp's products to a market outside of Arizona through social media exposure.

With no discussion of Arizona or an Arizona audience, the Muises' posts on social media regarding Beauchamp and Beauchamp's products also did not target Arizona. *See Xcentric*, 683 F.Supp.2d at 1073 (finding no personal jurisdiction where "[p]laintiffs have not alleged that [d]efendant's internet article mentioned Arizona or Arizona residents, or that [d]efendants took any affirmative steps to direct the article or website to an Arizona audience"). Posting on the internet about a resident of the forum state does not constitute targeting the forum state itself. *Id.* (holding "[p]laintiffs have not met their burden . . . of showing defendants expressly aimed [an online article]. . . at Arizona" because "[p]laintiffs have alleged no connection between the [article] and the forum state other than that the article was about [plaintiffs]").

Moreover, the fact that the Muises' social media posts were viewable in Arizona does not indicate that the Muises expressly aimed the posts at Arizona. *Id.* (citing *Young v. New Haven Advocate*, 315 F.3d 256, 264 (4th Cir. 2002)). Federal courts have recognized that an internet post, which reaches the forum state and is accessible to residents of the forum state, does not subject a defendant to personal jurisdiction in the forum state. *C.f. Boddy v. Pourciau*, No. C18-1046, 2018 WL 4637380, at *5 (W.D. Wash. Sep. 27, 2018) ("To hold that [d]efendants are subject to this court's jurisdiction simply because the tweets were viewable in Washington would open [d]efendants to being hauled into every court in the country."); *Stewart v. Stuckey-Smith*, No. 22-04553, 2022 WL 17069966 at *5

(D.N.J. 2022) (citing *Young*, 315 F.3d at 263) ("Mere placement of content on the internet, by itself does not subject the poster to personal jurisdiction in any state in which someone accesses that content.").

Even if the Muises' posts caused a foreseeable effect on Beauchamp in Arizona, such as deterring consumers in Arizona from purchasing Beauchamp's products, that foreseeable effect alone would not establish purposeful direction. *See Morrill*, 873 F.3d at 1145 ("A tort must involve the forum state itself, and not just have some effect on a party who resides there."). Although "a defendant's intended audience and the place of plaintiff's reputation may play a role in the jurisdiction analysis," *Boddy*, 2022 WL 17069966 at *6 (citing *Walden*, 571 U.S. at 287-88), a plaintiff would need to show that the forum state was the "focal point of the . . . harm suffered." *Walden*, 571 U.S. at 287 (quoting *Calder*, 465 U.S. at 789). But the Muises' posts were viewable throughout the country, and Beauchamp has failed to show that Arizona was a focal point of any harm caused by the Muises' posts or that the Muises intentionally focused their conduct on the state of Arizona in particular. Thus, the Muises' posts did not target Arizona or its residents.

Since Beauchamp has not met her burden of establishing that any of the Muises' actions were expressly aimed at Arizona or its residents, the Court need not consider whether Beauchamp satisfied the final element of the "effects test" or the other requirements for personal jurisdiction.

At oral argument, the parties addressed Count 15 of the Complaint, which alleges that Christina Muise stated on social media, "We should go after her board certifications." (Doc. 1-2 at 3). Beauchamp argued that this statement referred to the Arizona board certifications of Beauchamp herself. The Muises argued that this statement referred to the board certifications of a person by the name of "Dr. Monica Richardson." Exhibit Q features the alleged statement, which is located within the comments of a social media post. (Doc. 9 at 44). Upon review of Exhibit Q, it is unclear to the Court whether the alleged statement refers to Beauchamp or Dr. Monica Richardson. The word "her" may refer to

"Dr. Monica Richardson," whose name is listed in the comment above Christina Muise's comment, or may refer to Beauchamp, who is potentially the subject of the main post. (Doc. 9 at 44). It is conceivable that whether or not this statement refers to the Arizona board certifications of Beauchamp may affect this Court's jurisdiction analysis. "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988)). Since ambiguity exists surrounding this allegation, and it is unclear whether the Complaint's deficiency could be cured by amendment, the Court grants the Motion to Dismiss with leave to amend.

## CONCLUSION

Beauchamp has failed to meet her burden of making a prima facie case of personal jurisdiction over the Muises. As a result, dismissal is appropriate. Since it is conceivable that the defects described above could be cured by amendment, such dismissal is with leave to amend.

**IT IS THEREFORE ORDERED** that Defendants Maria Christina Muise and Jason Muise's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED** with leave to amend within thirty days of the date of this Order. If Plaintiff fails to file an amended complaint within thirty days of this order, the Clerk is directed to terminate this action.

Dated this 1st day of October, 2024.

_____
G. Murray Snow
Chief United States District Judge